Schuyler G. Carroll
PERKINS COIE LLP
30 Rockefeller Center, 22nd Floor
New York, NY  10112-0085
Telephone: 212.262.6900
Facsimile: 212.977.1649
Email: scarroll@perkinscoie.com

Proposed Attorneys for the Debtor World Cable Inc.

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------- X
In re:                                             Chapter  No. 11

WORLD CABLE INC.,
                                                          Case No.14-10379 (MG)
          Debtor
---------------------------------------- X

## DECLARATION OF SHAHID "BOB" RASUL
## IN SUPPORT OF FIRST DAY MOTIONS

Shahid Rasul, hereby declares as follows:

1. I am the president and chief technology officer of World Cable Inc. ("WCI"), which filed a voluntary petition under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") on the date hereof (the "Petition Date").

2. In my capacity as president and CTO, I am fully familiar with WCI's operations, businesses, and financial affairs.  Except as otherwise indicated, all facts set forth in this declaration are based on my personal knowledge, my review of relevant documents, information provided to me by employees working under my supervision, or my opinion based on experience, knowledge, and information concerning WCI's operations.  If called upon to testify, I would testify competently to the facts set forth in this declaration.  All financial information contained herein is unaudited.

## REQUIRED CONTENTS OF DECLARATION

A. **Nature of Debtor's Business**

3. WCI is a corporation organized under the laws of the State of New York. WCI was incorporated in November 2005, to carry on the work of predecessor companies which had worked to develop technology to bring foreign television programming to the United States through internet protocol television ("IPTV") service. WCI was formed to provide customers a variety of bundled service packages that can include digital cable television programming, internet service, and voice over IP telephone ("VoIP") service.

4. WCI serves a unique market by providing foreign-language television programming as part of its cable television service. This programming originates in various countries and is retransmitted to U.S.-based customers by WCI. WCI currently offers television channels from India, Pakistan, Bangladesh, Nepal, Jamaica, and Afghanistan. As a consequence, WCI's customers tend to be immigrants who are attracted to native-language television programming and competitive international long-distance telephone rates offered by WCI.

5. In its early years, WCI began by providing service to customers in New York City. Between 2006 and 2009, WCI expanded its offerings and its service area.

6. WCI now provides access to over 100 television channels, pay-per-view service, and video on demand.

7. WCI offers competitively-priced bundled service featuring cable television, internet service, and VoIP service. Service that includes all three of these components is known as "triple play," and is viewed by many experts in the telecommunications industry as a "competitive necessity" for modern service providers.[1]

8. WCI currently serves subscribers in all New York City boroughs and Long Island. As of the Petition Date, WCI has approximately 1,270 customers.

---

[1] *See In the Matter of Annual Assessment of the Status of Competition in the Market for the Delivery of Video Programming*, MB Docket 06-189, Thirteenth Annual Report, FCC Rcd. 542, 605, at ¶ 131, n.454 (2009).

9.    In conjunction with its operations over the years, WCI has developed and refined proprietary software and hardware and has developed valuable trade secrets including customer lists and traffic data.

10.    For the twelve months ending December 31, 2013, WCI had gross revenues of $761,160. For the same time period, WCI had a total net loss of $428,321.98. These figures are based on the accrual basis of accounting, which is WCI's designated accounting method.

**B.    Events Leading to Chapter 11 Filing**

11.    WCI's purpose for filing this chapter 11 case is to promptly negotiate and confirm a chapter 11 plan that will allow it to restructure its debt, obtain needed capital to grow its business, and to prosecute its claims against Lalon (described below), regain customers, and stop Lalon's improper conduct.

12.    Through years of refinement, WCI has developed an innovative and competitively-priced service that utilizes cutting-edge telecommunications technology and has a growing and loyal customer base (i.e., recent immigrants living in the New York area). WCI has long desired to expand its geographic service area, but has typically been constrained by inadequate working capital. As a result, while many of the initiatives WCI began were well received and even resulted in substantially increased revenues, without additional capital it was difficult for WCI to achieve long-term profitability.

13.    By 2005, WCI had completed the design of the technology that enables its customer offerings. Having developed the technological backbone of its business, WCI shifted its focus to customer recruitment and retention.

**1.    The Lalon Dispute**

14.    As part of its efforts to expand its number of customers, in approximately July 2008, WCI hired Ahmodul Barobhuiya ("Barobhuiya") to support customer service and technical operations. Barobhuiya is an immigrant from Bangladesh, and WCI believed he would be particularly skilled in reaching and servicing the needs of Bengali customers, who are a particular focus of WCI's customer base.

-3-

15.     Between 2008 and 2010, Barobhuiya continued to work and gain responsibility at WCI. During Barobhuiya's employment WCI engaged in extensive marketing efforts, which entailed advertising in ethnic newspapers and broadcast outlets, attending community events, and performing outreach to houses of worship that attract immigrant worshipers. When WCI employees made contact with potential customers as a result of this marketing, the potential customer was entered into WCI's proprietary customer relationship management ("CRM") software, thus enabling sales staff to follow-up with potential customers. Barobhuiya, as part of his employment, worked extensively with the CRM software.

16.     While employed by WCI, Barobhuiya—in violation of the terms of his employment contract—planned the formation of his own IPTV service provider that would directly complete with WCI in focusing on foreign television viewers in the U.S. This competitor was eventually formed as Lalon TV, Inc., doing business as Total Cable USA ("Lalon") .

17.     Barobhuiya copied WCI's valuable proprietary information including the CRM software, customer lists, vendor lists, schematics, and hardware configurations to enable quality IPTV signals.

18.     Barobhuiya also wrongfully took possession of various hardware owned by WCI, including nine Envivio 4Caster C4 encoders which WCI had purchased (at the cost of approximately $16,200 each) in anticipation of expanded operations.

19.     In April 2011, Barobhuiya terminated his employment with WCI and devoted his full time to operating Lalon. Unfortunately, Barobhuiya's improper actions have substantially harmed WCI's business and have diverted many of WCI's customers to Lalon. Prior to 2011, WCI has maintained positive cash flow and had realized 100% annual increase in sales. The improper actions of Barabhuiya and Lalon has led to a precipitous drop in WCI's customers and revenues.

20.     In 2013, WCI sued Barobhuiya, Lalon, and others in New York Supreme Court for Bronx County, alleging breach of contract, misappropriation of trade secrets, unfair

competition, breach of the common-law duty of loyalty, diversion of corporate opportunities, conversion, and tortious interference with contractual relations. This action, captioned *World Cable v. Lalon TV*, Index No. 021025/2013, remains pending in the state court.

### 2. The West Litigation

21. In 2010, in an effort to obtain new investment capital, WCI retained a former telecommunications executive, Tracy Thompson-West ("West"), for the purpose of finding potential investors. WCI proposed paying a finder's fee, but West interpreted the parties' contract as an employment contract, with compensation due to her regardless of performance.

22. In 2011, after WCI and West's relationship ended, West sued WCI in New York Supreme Court for New York County, alleging wrongful termination. WCI and West subsequently agreed to discontinue the litigation and submit their dispute to binding arbitration. An arbitrator ruled in favor of West, and rendered an award of $691,786.81 (the "Arbitration Award").

23. In December 2013, the Supreme Court affirmed the Arbitration Award in favor of West.

24. Having already had its business operations disrupted by the theft of intellectual property, the Arbitration Award has made it necessary for WCI to seek relief under the Bankruptcy Code and reorganize its financial affairs. Accordingly, WCI commenced the above-captioned case in furtherance of an ongoing effort to improve operating results and reduce debt.

## C. Debtor's Capital Structure and Financial Position

### 1. Creditors and Claims

25. As required by L.B.R. 1007-2(a)(4), a list setting forth WCI's twenty largest unsecured creditors is attached hereto as **Exhibit 1**.

26. WCI has two secured creditors, Community National Bank ("CNB") and the Internal Revenue Service ("IRS"). As required by L.B.R. 1007-2(a)(5), a list setting forth the details of these creditors' claims is attached hereto as **Exhibit 2**.

27. On or about March 17, 2010, CNB made a loan to WCI in the original principal amount of $1.65 million (the "Loan"). Repayment of the Loan is secured by a lien on all of WCI's assets. Repayment of the Loan is also guaranteed by several third parties, including 676 Associates, Inc. ("676"). As part of its guaranty, 676 granted CNB a mortgage on certain real property owned by 676.

28. On April 3, 2013, CNB sued WCI and 676 (along with certain other guarantors) in New York Supreme Court for Kings County, seeking a judgment of foreclosure against 676's collateral. CNB's complaint does not seek to foreclose its lien on WCI's collateral.

29. IRS has filed notices of federal tax liens against WCI for unpaid employment tax liabilities from 2008 and 2009.

**2.    Debtor's Assets, Liabilities and Places of Business**

30. As required by L.B.R. 1007-2(a)(6), a summary of WCI's assets and liabilities is attached hereto as **Exhibit 3**.

31. WCI leases space for operations and administration at the following locations, which collectively house substantially all of WCI's assets located within the United States:

    a.    33 Whitehall Street, 30th Floor, New York, New York 10004.

    b.    3839 Bell Boulevard, Suite 233, Bayside, New York 11361.

    c.    4216 – 13th Street, Long Island City, New York 11101.

32. In addition to its United States operations, WCI employs approximately 59 employees at a call center located in Lahore, Pakistan. Until recently, WCI also operated a call center in Dhaka, Bangladesh; however, operations at this location have been suspended as a result of the Lalon Dispute.

33. WCI's books and records are kept at the company's Bayside office, located at 3839 Bell Boulevard, Suite 233, Bayside, New York 11361

34. As part of its business operations, WCI owns assets outside the territorial limits of the United States. Specifically, to transmit foreign television channels to its U.S. customers, WCI must receive programming from foreign broadcasters, via satellite, at "teleport" locations in

certain foreign countries. Upon receiving these satellite signals, WCI compresses and encodes the signals and then retransmits the programming to its New York office via fiber optic cable. As part of this process, WCI maintains telecommunications equipment in the following countries:

    a. <u>Hong Kong</u>: equipment valued at approximately $240,000.

    b. <u>Singapore</u>: equipment valued at approximately $610,000.

    c. <u>Dhaka, Bangladesh</u>: equipment valued at approximately $14,000.

    d. <u>Lahore, Pakistan</u>: equipment valued at approximately $930,000.

35. None of WCI's property is in the possession or custody of any custodian, public officer, mortgagee, pledgee, assignee of rents, secured creditor, or agent for any such entity. Accordingly, L.B.R. 1007-2(a)(8) does not apply.

**3.**  **Equity Interests**

36. WCI has one class of common stock, which is not publicly traded. Ninety percent of WCI's stock is held by president and chief technology officer Shahid Rasul, and the remaining ten percent is held by former chief financial officer Sharif Sheikh.

**D.**  **Payroll Information**

37. Pursuant to L.B.R. 1007-2(b), WCI estimates that its weekly payroll for the thirty days following the Petition Date will be as follows:

    a. For employees other than officers, directors, and stockholders, weekly payroll is expected to be approximately $4,920.

    b. As explained in Exhibit 2 to the Debtor's cash collateral motion (filed concurrently herewith), compensation for employees who are also officers, directors, or stockholders, weekly payroll is being deferred and is therefore expected to be zero.

**E.**  **Pending Litigation**

38. On December 12, 2013, the Supreme Court of the State of New York, New York County, affirming the Arbitration Award in favor of Ms. Thompson-West (*see supra*, ¶¶ 21-24). This litigation is captioned *Thompson-West v. World Cable, Inc.*, Index No. 0653593/2013.

-7-

39. Attached hereto as **Exhibit 4** is a list of all pending litigation to which WCI is a party.

F. **Debtor's Senior Management**

40. I have served as president and chief technology officer of WCI since its formation in 2005.

41. I graduated from the State University of New York Health Science Center at Brooklyn in June 1998 and practiced medicine prior to founding WCI. In addition to my medical education, I have experience and training in various areas of network administration, telephony, software development, and broadcasting technologies. I have served as chief technology officer of two other companies. From 1997 to 2000 I was CTO of CeoSites, a technology company that provided marketing products and services to customers in the real estate industry. From 1998-2001 I served as CTO of Go Net, an internet service provider in Asia that was sold and taken public.

42. The other member of WCI's management team is Sid Sohail. Mr. Sohail is a 1992 graduate of City University of New York Queens College, with Bachelor of Economics. He founded a food service company and successfully grew it to include multiple franchise concepts before selling the business in 2002. Sohail also managed eight different locations for discount seller Retail Stores. He has worked on WCI's operations from the company's inception, where he has overseen marketing and operations.

G. **Other Required Information**

43. WCI's bankruptcy case was commenced by the voluntary filing of a petition under chapter 11, and was not originally commenced under chapter 7 or chapter 13. To my knowledge, no creditors' committee has been organized at this time. Accordingly, L.B.R. 1007-2(a)(2) does not apply.

44. To my knowledge, no prepetition committee was organized. Accordingly, L.B.R. 1007-2(a)(3) does not apply.

112544-0001/LEGAL29101169.6

## DEBTOR'S ANTICIPATED STRATEGY FOR CHAPTER 11

45. During its existence, WCI has developed a strong business model, premised on providing a niche service for which there is strong consumer demand, and coupled with innovative cutting-edge technology.

46. Because WCI has historically been undercapitalized, the company has often not had the resources necessary to properly implement new operational and business-development strategies. For example, lack of legal counsel and poor contract-drafting led to the West litigation and the Arbitration Award. A lack of internal controls and adequate staffing that existed in the past contributed to the misconduct underlying the Lalon dispute.

47. In order to put its past missteps behind it and focus on professionally implementing its business development plan, WCI intends to use the chapter 11 reorganization process to restructure its secured debt, obtain new capital, resolve pending third-party disputes, stabilize operations, and regain customers that have been lost as a result of the Lalon dispute. WCI now has engaged the financial advisory firm of EisnerAmper to assist with its financial efforts and is working closely with its legal counsel to ensure WCI's actions fully protect its business, the assets and its ability to generate profits.

48. While WCI does not expect to generate profits in the immediate near term, it has implemented changes that are expected to result in improved performance and profits beginning approximately 120 days after the Petition Date.

49. WCI is aware that it must discharge the fiduciary duties of a chapter 11 debtor-in-possession. Along those lines, WCI intends to promptly work with its creditors to craft a reorganization plan that can provide creditors with reasonable recoveries and facilitate an expeditious exit from chapter 11.

//
//
//

Under penalty of perjury, I declare I have read this statement and to the best of my knowledge it is true.

Executed this 21st day of February, 2014, in Queens, New York

/s/ Shahid Rasul
Shahid Rasul

# United States Bankruptcy Court
## Southern District of New York

In re  **World Cable, Inc.**
Debtor(s)

Case No.
Chapter  **11**

## LIST OF CREDITORS HOLDING 20 LARGEST UNSECURED CLAIMS

Following is the list of the debtor's creditors holding the 20 largest unsecured claims. The list is prepared in accordance with Fed. R. Bankr. P. 1007(d) for filing in this chapter 11 [*or* chapter 9] case. The list does not include (1) persons who come within the definition of "insider" set forth in 11 U.S.C. § 101, or (2) secured creditors unless the value of the collateral is such that the unsecured deficiency places the creditor among the holders of the 20 largest unsecured claims. If a minor child is one of the creditors holding the 20 largest unsecured claims, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian."  Do not disclose the child's name.  See 11 U.S.C. § 112; Fed. R. Bankr. P. 1007(m).

| (1) | (2) | (3) | (4) | (5) |
|---|---|---|---|---|
| *Name of creditor and complete mailing address including zip code* | *Name, telephone number and complete mailing address, including zip code, of employee, agent, or department of creditor familiar with claim who may be contacted* | *Nature of claim (trade debt, bank loan, government contract, etc.)* | *Indicate if claim is contingent, unliquidated, disputed, or subject to setoff* | *Amount of claim [if secured, also state value of security]* |
| **AFA Group et al.**<br>**Joseph P. Garland**<br>**1 Barker Avenue, Second Floor**<br>**White Plains, NY 10601** | **Joseph P. Garland, Esq.**<br>**AFA Group et al.**<br>**1 Barker Avenue, 2nd Fl**<br>**White Plains, NY 10601**<br>**914-912-7858** | **Pending litigation** | **Contingent**<br>**Unliquidated**<br>**Disputed** | **1,400,000.00** |
| **Anooop Sareen**<br>**140 Church Street**<br>**New York, NY 10007** | **Anooop Sareen**<br>**140 Church Street**<br>**New York, NY 10007**<br>**516-974-5372** | **Loan** | | **200,000.00** |
| **Cable Vision Media pvt**<br>**3152 Albany Crescent**<br>**Bronx, NY 10463** | **Ijaz Ahmad**<br>**Cable Vision Media pvt**<br>**3152 Albany Crescent**<br>**Bronx, NY 10463** | **Trade Vendor** | | **987,861.00** |
| **Cogent**<br>**1015 31st Street, NW**<br>**Washington, DC 20007** | **Attn: Billing**<br>**Cogent**<br>**1015 31st Street, NW**<br>**Washington, DC 20007**<br>**202-295-4200** | **Trade Vendor** | | **18,900.00** |
| **Dish Network LLC**<br>**c/o John M. McLaughlin Esq.**<br>**77 Pleasant Street, PO Box 210**<br>**Northampton, MA 01061-0210** | **John M. McLaughlin Esq.**<br>**Dish Network LLC**<br>**77 Pleasant Street, PO Box 210**<br>**Northampton, MA 01061-0210**<br>**413-586-8218** | **Consent Decree entered against Debtor July 24, 2013** | | **68,000.00** |
| **Doyle & Broumand LLP**<br>**3152 Albany Crescent**<br>**Bronx, NY 10463** | **Doyle & Broumand LLP**<br>**3152 Albany Crescent**<br>**Bronx, NY 10463**<br>**718-796-2210** | **Legal services** | | **87,582.23** |
| **Epstein Becker & Green, P.C.**<br>**250 Park Avenue # 12**<br>**New York, NY 10177** | **Epstein Becker & Green, P.C.**<br>**250 Park Avenue # 12**<br>**New York, NY 10177**<br>**212-351-4500** | **Legal services - pending Litigation** | **Contingent**<br>**Unliquidated**<br>**Disputed** | **53,335.00** |

The Debtor reserves its rights to dispute each of the claims listed on this schedule on any basis.

Exhibit 1
Page 1 of 3

| (1) Name of creditor and complete mailing address including zip code | (2) Name, telephone number and complete mailing address, including zip code, of employee, agent, or department of creditor familiar with claim who may be contacted | (3) Nature of claim (trade debt, bank loan, government contract, etc.) | (4) Indicate if claim is contingent, unliquidated, disputed, or subject to setoff | (5) Amount of claim [if secured, also state value of security] |
|---|---|---|---|---|
| **Globecast Hong Kong**<br>**18/F Paramount Building**<br>**12 Ka Yip Street, Hong Kong**<br>**People's Republic of China** | **Johnny Ng**<br>**Globecast Hong Kong**<br>**18/F Paramount Building**<br>**12 Ka Yip Street, Hong Kong**<br>**People's Republic of China**<br>**+852-29651222** | **Trade Vendor** | | 14,000.00 |
| **MediaCo-Singapore**<br>**750E Chai Chee Road #05-03**<br>**Singapore 469005** | **Janny**<br>**MediaCo-Singapore**<br>**750E Chai Chee Road #05-03**<br>**Singapore 469005**<br>**+65 6395 5460** | **Trade Vendor** | | 22,000.00 |
| **Nine Lanes Korea**<br>**4f Corecess Building 500-2**<br>**Sangdaewon-dong,**<br>**Jungwon-gu**<br>**South Korea** | **Ellie Lim**<br>**Nine Lanes Korea**<br>**4f Corecess Building 500-2**<br>**Sangdaewon-dong, Jungwon-gu**<br>**South Korea**<br>**82-31-737-7900** | **Trade Vendor** | | 51,000.00 |
| **Paul Kandhari**<br>**140 Church Street**<br>**New York, NY 10007** | **Paul Kandhari**<br>**140 Church Street**<br>**New York, NY 10007**<br>**212-608-1100** | **Loan** | | 750,000.00 |
| **Premium Telecom**<br>**31J Gulberg 3**<br>**Lahore**<br>**Pakistan** | **Premium Telecom**<br>**31J Gulberg 3**<br>**Lahore**<br>**Pakistan** | **Trade Vendor** | | 2,004,000.00 |
| **Rahimzada et al.**<br>**209-43 27th Avenue**<br>**Bayside, NY 11360** | **Rahimzada et al.**<br>**209-43 27th Avenue**<br>**Bayside, NY 11360** | **Investment** | | 1,900,000.00 |
| **Sony/MSM Satellite (Singapore)**<br>**5 Tampines Central 6, #02-19**<br>**Singapore 529482** | **Sony/MSM Satellite (Singapore)**<br>**5 Tampines Central 6, #02-19**<br>**Singapore 529482**<br>**(65) 6786 3534** | **Trade Vendor** | | 1,310,000.00 |
| **Soundview Broadcasting**<br>**36-01 37th Avenue**<br>**Long Island, NY 11101** | **Soundview Broadcasting**<br>**36-01 37th Avenue**<br>**Long Island, NY 11101**<br>**(718) 937-8989** | **Trade Vendor** | | 345,000.00 |
| **Statewide Mgmt Org Group**<br>**3839 Bell Blvd.**<br>**Bayside, NY 11361** | **Statewide Mgmt Org Group**<br>**3839 Bell Blvd.**<br>**Bayside, NY 11361**<br>**718-301-1212** | **Loan** | | 625,000.00 |
| **Telx**<br>**1 State Street**<br>**21st Floor**<br>**New York, NY 10004** | **Attn: Billing**<br>**Telx**<br>**1 State Street, 21st Fl**<br>**New York, NY 10004**<br>**212-480-3300** | **Trade Vendor** | | 2,200.00 |
| **Tracy Thompson-West**<br>**Ateshoglou & Aiello P.C.**<br>**381 Park Ave South, Suite 701**<br>**New York, NY 10016** | **Steven D. Ateshoglou, Esq**<br>**Tracy Thompson-West**<br>**381 Park Ave South, Suite 701**<br>**New York, NY 10016**<br>**(212) 545-1740** | **Former employee - arbitration award** | **Disputed** | 850,000.00 |

The Debtor reserves its rights to dispute each of the claims listed on this schedule on any basis.

- 2 -

Exhibit 1
Page 2 of 3

| (1) Name of creditor and complete mailing address including zip code | (2) Name, telephone number and complete mailing address, including zip code, of employee, agent, or department of creditor familiar with claim who may be contacted | (3) Nature of claim (trade debt, bank loan, government contract, etc.) | (4) Indicate if claim is contingent, unliquidated, disputed, or subject to setoff | (5) Amount of claim [if secured, also state value of security] |
|---|---|---|---|---|
| **Verizon Wireless Bankruptcy Administration** <br> **500 Technology Drive, #550** <br> **Saint Charles, MO 63304** | **Verizon Wireless Bankruptcy Administration** <br> **500 Technology Drive, #550** <br> **Saint Charles, MO 63304** | **Trade Vendor** | | 900.00 |
| **XO Communications** <br> **13865 Sunrise Valley Drive** <br> **Herndon, VA 20171** | **XO Communications** <br> **13865 Sunrise Valley Drive** <br> **Herndon, VA 20171** <br> **(703) 547-2217** | **Trade Vendor** | | 5,600.00 |

# DECLARATION UNDER PENALTY OF PERJURY
## ON BEHALF OF A CORPORATION OR PARTNERSHIP

I, the President of the corporation named as the debtor in this case, declare under penalty of perjury that I have read the foregoing list and that it is true and correct to the best of my information and belief.

Date **February 21, 2014**         Signature **/s/ Shahid Rasul**
                                                    **Shahid Rasul**
                                                    **President**

*Penalty for making a false statement or concealing property*:  Fine of up to $500,000 or imprisonment for up to 5 years or both. 18 U.S.C. §§ 152 and 3571.

The Debtor reserves its rights to dispute each of the claims listed on this schedule on any basis.

- 3 -

Exhibit 1
Page 3 of 3

2/20/14 4:03PM

B6D (Official Form 6D) (12/07)

In re **World Cable, Inc.**,    Case No. _____

Debtor

# SCHEDULE D - CREDITORS HOLDING SECURED CLAIMS

State the name, mailing address, including zip code, and last four digits of any account number of all entities holding claims secured by property of the debtor as of the date of filing of the petition. The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. List creditors holding all types of secured interests such as judgment liens, garnishments, statutory liens, mortgages, deeds of trust, and other security interests.

List creditors in alphabetical order to the extent practicable. If a minor child is a creditor, the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m). If all secured creditors will not fit on this page, use the continuation sheet provided.

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor", include the entity on the appropriate schedule of creditors, and complete Schedule H - Codebtors. If a joint petition is filed, state whether the husband, wife, both of them, or the marital community may be liable on each claim by placing an "H", "W", "J", or "C" in the column labeled "Husband, Wife, Joint, or Community".

If the claim is contingent, place an "X" in the column labeled "Contingent". If the claim is unliquidated, place an "X" in the column labeled "Unliquidated". If the claim is disputed, place an "X" in the column labeled "Disputed". (You may need to place an "X" in more than one of these three columns.)

Total the columns labeled "Amount of Claim Without Deducting Value of Collateral" and "Unsecured Portion, if Any" in the boxes labeled "Total(s)" on the last sheet of the completed schedule. Report the total from the column labeled "Amount of Claim" also on the Summary of Schedules and, if the debtor is an individual with primarily consumer debts, report the total from the column labeled "Unsecured Portion" on the Statistical Summary of Certain Liabilities and Related Data.

☐ Check this box if debtor has no creditors holding secured claims to report on this Schedule D.

| CREDITOR'S NAME AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | CODEBTOR | Husband, Wife, Joint, or Community H/W/J/C | DATE CLAIM WAS INCURRED, NATURE OF LIEN, AND DESCRIPTION AND VALUE OF PROPERTY SUBJECT TO LIEN | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM WITHOUT DEDUCTING VALUE OF COLLATERAL | UNSECURED PORTION, IF ANY |
|---|---|---|---|---|---|---|---|---|
| Account No.<br><br>**Community National Bank**<br>**400 Broadhollow Road**<br>**Suite 305**<br>**Melville, NY 11747** | | - | **Loan**<br><br>**All assets**<br><br>Value $ **Unknown** | | | | **1,340,000.00** | **Unknown** |
| Account No.<br><br>**Internal Revenue Service**<br>**PO Box 7346**<br>**Philadelphia, PA 19101-7346** | | - | **2008-2009**<br><br>**Tax lien**<br><br>**All personal property**<br><br>Value $ **Unknown** | | | | **49,659.47** | **Unknown** |
| Account No.<br><br><br> | | | <br><br>Value $ | | | | | |
| Account No.<br><br><br> | | | <br><br>Value $ | | | | | |
| **0** continuation sheets attached | | | Subtotal<br>(Total of this page) | | | | **1,389,659.47** | **0.00** |
| | | | Total<br>(Report on Summary of Schedules) | | | | **1,389,659.47** | **0.00** |

Software Copyright (c) 1996-2013 - Best Case, LLC - www.bestcase.com    Best Case Bankruptcy

Exhibit 2
Page 1 of 2

# EXHIBIT 3

## Summary of Assets and Liabilities (as of 12/31/13)

<u>Total assets</u>:         $11,131,278

<u>Total liabilities</u>:    $15,431,068

# EXHIBIT 4

## Pending Litigation Involving Debtor

| Caption of Suit and Case Number | Nature of Proceeding | Court or Agency and Location | Status or Disposition |
|---|---|---|---|
| *Community National Bank v. World Cable, Inc.*<br>Case No. 501724/2013 | Foreclosure | King Civil Supreme Court, New York | Pending |
| *World Cable, Inc. v. Lalon TV, Inc.*<br>Case No 021025/2013 | Contract | Bronx Civil Supreme Court, New York | Pending |
| *Tracy Thompson-West v. World Cable, Inc.*<br>Case No. 653593/2013 | Contract | New York Civil Supreme Court, New York | Pending |
| *Epstein Becker & Green, PC v. World Cable, Inc.*<br>Case No. 156378/2012 | Contract | New York Civil Supreme Court, New York | Pending |
| *AFA Group, Inc. v. World Cable, Inc.*<br>Case No. 027502/2010 |  | Queens Civil Supreme Court, New York | Pending |
| *Ruskin Moscou Faltischek v. World Cable, Inc.*<br>Case No. 015014/2011 | Contract | Nassau Civil Supreme Court, New York | Judgment |

112544.0001/29236227.1