Schuyler G. Carroll
PERKINS COIE LLP
30 Rockefeller Center, 22nd Floor
New York, NY  10112-0085
Telephone: 212.262.6900
Facsimile: 212.977.1649
Email: scarroll@perkinscoie.com

Proposed Attorneys for the Debtor World Cable Inc.

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------- X

In re:                                                              Chapter  No. 11

WORLD CABLE INC.,
                                                                         Case No.14-10379 (MG)
              Debtor

---------------------------------------- X

# MOTION OF WORLD CABLE INC. FOR ENTRY OF AN ORDER (A) AUTHORIZING USE OF CASH COLLATERAL, (B) GRANTING ADEQUATE PROTECTION TO PREPETITION SECURED CREDITORS, AND (C) SCHEDULING A FINAL HEARING

World Cable Inc. ("WCI," or the "Debtor"), as debtor and debtor-in-possession, hereby submits this motion and respectfully represents as follows:

### Relief Requested

1.     The Debtor seeks entry of an order, substantially in the form attached hereto as **Exhibit 2**: (A) authorizing WCI's use of cash collateral on an interim basis, (B) granting adequate protection to holders of prepetition secured claims; and, (C) scheduling a final hearing on use of cash collateral.

### Jurisdiction

2.     Pursuant to sections 1107 and 1108 of the Bankruptcy Code, the Debtor continues to operate its business and manage its property as a debtor and debtor-in-possession.

3. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this district pursuant to 28 U.S.C. § 1408. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (M).

**Background**

4. On the date hereof (the "Petition Date"), the Debtor filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

5. WCI is a New York corporation headquartered in New York, New York. WCI offers competitively priced, bundled telecommunications services including foreign cable television channels, internet service, and voice over internet telephone service to customers in all boroughs of New York City and Long Island . Rasul Decl. ¶ 4.

6. WCI commenced this chapter 11 case so that it can promptly negotiate and confirm a chapter 11 plan that will allow it to restructure its debt, obtain needed capital to grow its business, regain customers, and resolve currently pending business disputes with third parties. *Id.* ¶ 11.

7. Additional information concerning WCI's business activities and the need for restructuring can be found in the declaration of Shahid Rasul (the "Rasul Declaration"), filed concurrently with this motion.

8. WCI has two secured creditors: Community National Bank ("CNB") and the Internal Revenue Service ("IRS").

9. On or about March 17, 2010, CNB made a loan to WCI in the original principal amount of $1.65 million (the "Loan"). Repayment of the Loan is secured by a lien on all of WCI's assets. Repayment of the Loan is also guaranteed by several third parties, including 676 Associates, Inc. ("676"). As part of its guaranty, 676 granted CNB a mortgage on certain real property owned by 676. Rasul Decl. ¶ 27.

10. On April 3, 2013, CNB sued WCI and 676 (along with certain other guarantors) in New York Supreme Court for Kings County, seeking a judgment of foreclosure against 676's collateral. CNB's complaint does not seek to foreclose its lien on WCI's collateral. *Id.* ¶ 28.

11. IRS has filed notices of federal tax liens against WCI for unpaid employment tax liabilities from 2008 and 2009. *Id.* ¶ 29. The total face amount of the IRS claims at the times of the respective lien filings is $49,659.47. WCI is unaware of whether there is any equity in its property to which the IRS liens may attach.

12. Because most of WCI's cash appears to be subject to the liens of CNB and IRS (collectively, the "Lienholders"), the Debtor must receive authorization to use this cash in order to continue business operations and maximize the value of its assets.

### Use of Cash Collateral

13. Pursuant to section 363(c) of the Bankruptcy Code, the Debtor requests authority for the limited use of the Lienholders' cash collateral as provided in the cash collateral budget attached hereto as **Exhibit 1** (the "Budget").

14. The Debtor's estate has an immediate need for use of the cash collateral, in the amounts specified in the Budget, to avoid immediate and irreparable harm to the Debtor's business operations and tangible and intangible personal property, including goodwill and going concern value (collectively, the "Non-Cash Collateral"). Without the ability to use the Lienholders' cash collateral, the Non-Cash Collateral may suffer damage.

15. The Debtor has sought CNB's consent to use cash collateral and provided CNB's counsel with a draft of the proposed interim order. The Debtor intends to use the time prior to the hearing to attempt to agree upon a consensual order to submit to this Court.

16. Subject to the Expense Carve Out (defined below), the Debtor proposes to provide the following adequate protection to the Lienholders, pursuant to section 361 of the Bankruptcy Code:

(a) A lien on and security interest (the "Replacement Lien") in all post-petition property in which the Lienholders had a lien and/or security interest pre-petition, including inventory, chattel paper, accounts, equipment, and general intangibles that was subject to the Lienholders' pre-petition liens and/or security interests, and all proceeds and products therefrom (the "Replacement Collateral"). For the avoidance of doubt, the

Replacement Collateral does not include any claims or recoveries of the Debtor under Chapter 5 of the Bankruptcy Code ("Chapter 5 Claims"). The Replacement Lien is in addition to the liens and security interests that the Lienholders had in the assets and property of the Debtor as of the Petition Date.

(b)     To the extent that the Replacement Lien is inadequate to provide adequate protection to the Lienholders, the Lienholders shall have a perfected lien on, and security interest in, all of the Debtor's right, title and interest in, to and under all assets of the of the estate other than Chapter 5 Claims, subject to any validly perfected security interest or lien in existence as of the Petition Date, or a valid lien perfected (but not granted) after the Petition Date to the extent such perfection in respect of a prepetition claim is expressly permitted under the Bankruptcy Code ("Additional Lien").

(c)     To the extent that the Replacement Lien and Additional Lien are inadequate to provide adequate protection to the Lienholders, the Lienholders shall have a superpriority claim pursuant to section 507(b) of the Bankruptcy Code (the "Superpriority Claim"), subject only to the Expense Carve Out.

(d)     The Replacement Liens, the Additional Liens, and the Superpriority Claims of CNB and IRS shall all bear the same relative priorities as each of the Lienholders' prepetition liens.

17.     The Debtor further proposes that cash collateral will be used in accordance with the Budget, with a ten percent variance allowed for each line item expense, not to exceed a total budget variance of ten percent in excess of budgeted expenditures. The Debtor will provide CNB with the same frequency and types of financial reporting as provided pre-petition. Any amendments or modifications to the Budget must either be consented to in writing by CNB or approved by order of this Court.

18.     In addition to the expenses contained in the Budget, the Debtor seeks authority for an expense carve out to pay costs and professional fees, as described below.

-4-

112544-0001/LEGAL29133690.3

19.     The Debtor requests that the Replacement Lien, the Additional Lien, and the Superpriority Claim be subject to and subordinate to:

(a)     amounts payable pursuant to 28 U.S.C. § 1930(a)(6) and any fees payable to the clerk of the Bankruptcy Court ("Court Costs");

(b)     allowed, unpaid postpetition fees and expenses of attorneys, accountants, and other professionals retained in the Bankruptcy Case by the Debtor or any Court-Appointed Creditors Committee incurred during the case ("Priority Professional Expenses"), but the amount entitled to priority under this subclause (b) shall not exceed $300,000 without the written consent of CNB (the "Professional Expense Cap"); and

(c)     to the extent applicable, reasonable post-conversion fees and expenses of a chapter 7 trustee, not to exceed $20,000 (the "Conversion Costs," and together with the Court Costs and the Professional Expense Cap, the "Expense Carve Out").

## Basis for Relief

20.     Section 363(c)(2) of the Bankruptcy Code provides that a debtor may not use cash collateral without the consent of the secured creditor or authority granted by the Bankruptcy Court. Section 363(e) of the Bankruptcy Code provides that on request of an entity that has an interest in property to be used by a debtor, the bankruptcy court shall prohibit or condition such use as necessary to provide adequate protection of such interest. What constitutes adequate protection is decided on a case-by-case basis. *In re Mosello*, 195 B.R. 277, 289 (Bankr. S.D.N.Y. 1996).

21.     The proposed conditions governing WCI's use of cash collateral, as well as the proposed adequate protection, is a sound exercise of the Debtor's business judgment and is necessary to obtain use of the cash collateral. Use of the cash collateral is required to maintain the Debtor's going concern value and protect other Non-Cash Collateral. Thus, granting the relief requested in this motion is in the best interests of the Debtor's estates and its creditors. The cash collateral will be used to provide the Debtor's vendors, suppliers, and employees with

necessary comfort to continue ongoing relationships with the Debtor, thus allowing the Debtor to continue providing quality goods and service to its customers.

22. As the debtor-in-possession, the Debtor has the authority to adopt reasonable employment policies, subject to the applicable provisions of the Code and may use, sell, or lease property of the bankruptcy estate to continue its operations. 11 U.S.C. §§ 363(b), 1107, 1108. In addition, the Court may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of the Bankruptcy Code. 11 U.S.C. § 105(a).

23. Likewise, the Expense Carve Out is an appropriate use of the estate's cash, which will ensure that the Debtor is adequately advised during the reorganization process. *See In re Ames Dept. Stores*, 115 B.R. 34, 38 (Bankr. S.D.N.Y. 1990) ("Absent [an administrative expense carve out], the collectively rights and expectations of all parties-in-interest are sorely prejudiced.").

## Notice

24. No request has been made for the appointment of a trustee or examiner, and no official creditors committee has yet been established in this case.

25. Notice of this motion has been given by electronic mail, facsimile or overnight courier to: (a) the Office of the United States Trustee; (b) Community National Bank; (c) the Internal Revenue Service; (d) each of the Debtor's twenty (20) largest unsecured creditors; and (e) any party filing a request for special notice in this case. In light of the relief requested herein, the Debtor submits that no other or further notice is required.

26. The Debtor further requests that the Court schedule a final hearing on this motion and authorize the Debtor to serve a copy of the interim cash collateral order as entered, which will fix the time and date for the filing of objections, by first-class mail upon the parties served with this motion. The Debtor requests that the Court to deem such notice of the final hearing to be sufficient notice under Bankruptcy Rule 4001.

-7-

**Conclusion**

27.   The Debtor requires the use of cash collateral in order to continue its business operations, maximize the value of its assets, and achieve its restructuring goals.  If the Debtor is not allowed to use cash collateral, it has no way of funding its operations.

WHEREFORE, the Debtor respectfully asks the Court to enter an interim order authorizing the use of cash collateral and granting adequate protection as specified herein.

Dated: New York, New York
       February 21, 2014

PERKINS COIE LLP
Proposed Attorneys for the Debtor World Cable Inc.

By: /s/ Schuyler G. Carroll
     Schuyler G. Carroll
30 Rockefeller Center, 22nd Floor
New York, NY  10112-0085
212.262.6900